City of Meadville, Firemen's Civil Service Commission *v.* H. Kenton Neff. City of Meadville, Appellant.

H. Kenton Neff, Appellant *v.* City of Meadville, Firemen's Civil Service Commission, Appellee.

Argued May 3, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Russell L. Schetroma, Culbertson, Weiss, Schetroma & Schug,* for City of Meadville.

*Gordon R. Miller, Blystone, Fuller, Kinnunen, Miller & Gamble,* for H. Kenton Neff.

OPINION BY JUDGE BLATT, October 4, 1982:

This is an appeal from an order of the Court of Common Pleas of Crawford County reversing a decision of the Firemen's Civil Service Commission (Commission) of the City of Meadville (City). The Commission had upheld the discharge of H. Kenton Neff (Neff) from his employment as a City fireman on the grounds that he had violated the City's residency requirements.

At the time Neff applied to and was hired by the City fire department in March, 1967, he did not reside within the City limits. Three or four months later, however, he moved into the City and resided there until July 1, 1977, when he moved to Cochranton. He continued to rent a furnished apartment within the City at which he had a listed telephone, paid utilities,[1] and maintained his voter registration.

Shortly before moving to Cochranton, Neff met with the then city manager to discuss whether or not disciplinary action would be taken against him if he carried out his intended move. The then city manager responded that, while keeping track of City employees' residences was not his top priority, if it were brought to his attention that a fireman was maintaining his primary residence outside of the City, he would enforce the residency requirement set forth in Section 23 of Article V of Ordinance 2755 of 1970 (Section 23). Neff, nevertheless moved and was subsequently advised in a letter dated July 22, 1977 by the city manager that his maintenance of his apartment within the City was "in order to circumvent the City's established residency requirement," and that Cochranton was now his actual address. Neff was given 90 days in which to re-establish a bona fide residence within the City. On January 28, 1978, Neff signed an annually

---

[1] This was one of three properties Neff owned within the City.

required certificate of residence in which he identified his apartment address as "my actual residence and primary domicile." By letter of April 21, 1978, the fire chief notified him that unless he established a bona fide residence within the City by August 15, 1978, he would be discharged, which he eventually was, on October 15, 1978.

Upon appeal, the Commission upheld Neff's discharge and, when he appealed to the Court of Common Pleas, the court remanded the matter for further testimony and findings concerning whether or not the residency requirements had been consistently enforced by the City in the past. Upon remand, and after holding a hearing, the Commission reaffirmed Neff's discharge. Upon a new appeal, the Court of Common Pleas reversed, finding that there had been a history of arbitrary and capricious enforcement of the residency requirement, and the court ordered Neff reinstated with full back-pay less set-off for income earned by him from other employment. The instant appeal by the City followed.

In an appeal from a civil service commission adjudication where, as here, the trial court took no additional evidence, our review is limited to determining whether or not the commission abused its discretion, committed an error of law, or made findings unsupported by substantial evidence in the record. *Homan v. Civil Service Commission,* 28 Pa. Commonwealth Ct. 426, 368 A.2d 883 (1977).

The City contends that the trial court erred as a matter of law and also that it conducted an independent factual determination, substituting its judgment for that of the Commission, and thereby exceeding its mandate under Section 10 of the Third Class Cities Code (Code),[2] which provides as follows:

[2] Act of May 31, 1933, P.L. 1108, *as amended,* 53 P.S. §39870.

The court [of common pleas] shall proceed to hear this appeal upon the original record taken therein, and no additional proof shall be introduced.

*Id.* In addition, our Supreme Court has recognized that, absent a showing that a civil service commission was motivated by prejudice, the findings of fact of the commission are binding upon appeal if such findings are found by the trial court to be supported by substantial evidence. *Lawrie's Appeal,* 338 Pa. 203, 12 A.2d 582 (1940).

The residency requirement at issue here is contained in Section 23 of Article V of City Ordinance 2755 and provides as follows:

23. All members of the Paid Fire Department of the City of Meadville, shall at all time during their employment, establish and maintain a bona fide, factual and legal residence within the limits of the City of Meadville. It shall be the duty of the Fire Chief, the Battalion Chiefs and the Captains and all members of the Fire Department to report and make known to the Fire Chief or City manager any information they may have or learn regarding violations of this section.

The validity of appropriately defined and uniformly applied residency requirements for municipal employees is well-established. *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645 (1976); *Nevitt v. Board of Supervisors of Logan Township,* 32 Pa. Commonwealth Ct. 474, 379 A.2d 1072 (1977). And, while a person may have more than one residence, he may have only one "legal residence" which, as used in Section 23, is properly construed[3] to mean domicile.

[3] Reference to a bona fide residence in a municipal ordinance establishing a residency requirement for municipal employees means the sole legal residence or domicile of the employee. *McCarthy.*

A determination of one's domicile is dependent on the facts of each individual case. *McCarthy v. Philadelphia Civil Service Commission,* 19 Pa. Commonwealth Ct. 383, 339 A.2d 634 (1975), *aff'd,* 424 U.S. 645 (1976). Here, Neff testified that he had two residences: the one in Cochranton to which he had moved and in which his family lived, and the other his apartment in the City where, by his own admission, he did not live. We believe this evidence sufficient to support the Commission's conclusion that Neff's domicile, that is, his "bona fide, factual and legal residence" under Section 23 was in Cochranton and not in the City.

As to the trial court's conclusion that Neff is entitled to reinstatement because the City allegedly has a history of arbitrary and capricious enforcement of its residency requirement for firemen, we note that the City ordinances which predated Section 23 required only that firemen should "reside within the corporate limits of the City." And we agree with Neff's contention and the trial court's conclusion that in at least one instance under those former ordinances, George Devenney, a fireman who was apparently domiciled outside of the City but who maintained an apartment within the City, was considered to be in compliance with the aforementioned residency requirement. This, however, is not dispositive in Neff's situation. Here, the controlling ordinance, Section 23 requires "a bona fide, factual and legal residence within the limits of the City" and this *domicile* requirement is clearly more stringent that the mere residence requirement set forth under prior ordinances, keeping in mind that a person may have more than one residence but only one legal residence or domicile. *McCarthy.* The City's treatment of Devenney, therefore, certainly does not establish a history of non-enforcement or arbitrary and capricious application of its residence requirements, for Devenney may well have been in compliance with the former ordinance.

However, even assuming arguendo that the City did not enforce residency requirements for Devenney, we still do not believe that Neff would be excused from compliance with Section 23, for the City repeatedly informed him that it intended to enforce its domicile requirement and that he must comply. We believe, therefore, that the fact that a municipality may not have enforced a residency requirement or rule in the past does not mean that it is forever precluded from attempting to enforce it at some future date.[4] Any other result would be absurd. The municipality need only provide adequate or reasonable notice to those affected by the requirement that it will be enforced, and clearly Neff was adequately informed of the City's intention, at least by the letter of April 21, 1978. We observe, moreover, that there is no evidence in the record which would indicate that, after Neff was informed that the residency requirement would be en-

---

[4] In the *Board of Education v. Philadelphia Federation of Teachers Local No. 3*, 40 Pa. Commonwealth Ct. 490, 397 A.2d 1273 (1979), we held that the employees could not argue that the Board failed to warn them that the residency requirement would be enforced in the future where the Board "effectively announced its intentions" to do so. *Id.* at 508, 397 A.2d at 1281.

Also, we believe this situation to be analogous to one often presented in unemployment compensation cases involving future enforcement of an existing rule. For example, in *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 14, n. 3, 441 A.2d 510, 512, n. 3, (1982), which involved a residency requirement, we stated:

This is not to say that an employer who has not consistently enforced a rule in the past is forever precluded from doing so . . . [a]n employee who violates a previously unenforced company rule after a warning that such rule would be strictly enforced in the future, is guilty of willful misconduct. (Citations omitted.)

We see no reason why, concerning a municipality's enforcement of a previously unenforced residency requirement in civil service matters, this same rationale should not apply.

forced, such requirement was not enforced or was enforced arbitrarily.[5]

We believe, therefore, that the trial court erred in reinstating Neff and accordingly we will reverse its order.

ORDER

AND Now, this 4th day of October, 1982, the order of the Court of Common Pleas of Crawford County in the above-captioned matter is reversed and the order of the Firemen's Civil Service Commission of the City of Meadville is reinstated.

---

[5] The record shows that another fireman, Ed Ridgeway, was discharged under Section 23, in or around 1973, when it was learned that he did not have a bona fide City residence.