Joseph Viggiano, Appellant *v.* Civil Service Commission of the City of Philadelphia, Appellee.

Argued April 6, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Richard M. Sanders,* with him *Herman Bloom, Bloom, Ocks and Fisher,* for appellant.

*James Grasty,* with him *Russell S. Endo,* Assistant City Solicitor, and *Reba C. Smallwood,* Deputy City Solicitor, for appellee.

OPINION BY JUDGE CRAIG, May 9, 1983:

Joseph Viggiano, who had been a police officer for the City of Philadelphia since July 6, 1977, appeals an order of the Court of Common Pleas of Philadelphia County, which affirmed a decision of the Civil Service Commission, upholding Viggiano's dismissal from the police department for failure to comply with residency requirements under Philadelphia Code §20-101[1] and Philadelphia Civil Service Regulation §30.01.[2]

In response to an anonymous telephone complaint, stating that Viggiano was residing at his parents' home in New Jersey, the department conducted an investigation from October 3, 1980 to October 27, 1980, which included a surveillance of Viggiano's activities. During each of nine spot checks that month, the investigators observed Viggiano commuting directly between his parents' New Jersey home and the district station at which he worked.

On October 27, 1980, after the department informed Viggiano of the investigation, he admitted that during October, 1980, he had not slept overnight at the Philadelphia apartment which was his address of record for the department. However, Viggiano explained that he had been regularly staying at his family home because of his mother's illness, which required his assistance.[3]

---

[1] Section 20-101 of the Philadelphia Code provides:

Section 1.

No person shall hereafter be appointed as an employee in the Civil Service of the City unless he shall have been a bona fide resident of the City for at least one year prior to his appointment.

Section 2.

Every employee in the Civil Service shall be required to maintain his bona fide residence in the City during the continuance of his employment by the City. . . .

[2] The regulation contains a cross-reference to the ordinance.

[3] Viggiano's mother developed a pulmonary artery obstruction in October, 1979, which recurred with "acute disabling labyrinthitis"

Viggiano also emphasized that his stay at his parents' home was temporary, and that all evidence reflected his intention to retain his Philadelphia domicile, including the fact that, since 1976, he has continuously: (1) paid rent at his Philadelphia apartment, (2) had mail delivered at that apartment, (3) paid telephone bills and utility bills at that apartment, (4) registered and voted as a Philadelphia voter, (5) had a Pennsylvania operator's license and motor vehicle registration, and (6) paid automobile insurance coverage based on Philadelphia residency, at almost twice the rate payable for a New Jersey resident. Nevertheless, the police department determined that Viggiano was not a bona fide resident of Phialdelphia and dismissed him.

"Bona fide residence," as defined in §20-101, is synonymous with domicile or sole legal residence. *McCarthy v. Philadelphia Civil Service Commission,* 19 Pa. Commonwealth Ct. 383, 339 A.2d 634 (1975), *aff'd,* 424 U.S. 645 (1976). The issue of legal residence depends on the actual conduct of the employee, *id.,* and the commission has the responsibility to weigh the various indicia of residency and draw inferences from the evidence presented. *Homan v. Civil Service Commission of Philadelphia,* 28 Pa. Commonwealth Ct. 426, 368 A.2d 883 (1977).

In *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 343, 10 A.2d 888, 890 (1939), cited in *McCarthy,* our Superior Court said:

When a residence is once acquired, it is presumed to continue until it is shown to have been changed, and when a change is alleged, the bur-

in June of 1980. She had difficulty breathing and had blackouts as a result of the lung artery obstruction after June, 1980. The labyrinthitis is an inflammation of the inner ear which causes equilibrium problems.

den of proving it rests upon the one making the allegation, and two things are indispensable thereto: First, a residence in a new locality, and, second, the intention to remain there. "Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired the old one remains."[4]

Here, the department's investigation revealed that Viggiano resided in his parents' New Jersey home during October, 1980. In addition, in his statement to the department following the surveillance, Viggiano acknowledged that he had not stayed overnight in his Philadelphia apartment since "about a month before the Pope was [in Philadelphia]," which was approximately one year before the investigation. Furthermore, Viggiano said that for the year preceding the investigation, he had used a call-forwarding service on his telephone, which forwarded calls from his Philadelphia apartment to his parents' New Jersey home. Also, Viggiano testified that he had taken a typing

[4] In ascertaining the "intention" portion of the domicile test, see our decisions in McCarthy and Homan (commission's conclusion that a city employee had intended to change domicile was supported by findings that the employee purchased a home for his wife and children in New Jersey, entered his young children in school there and admittedly spent as much of his time as possible in his New Jersey home); City of Meadville, Firemen's Civil Service Commission v. Neff, 69 Pa. Commonwealth Ct. 259, 450 A.2d 1078 (1982), and Nevitt v. Board of Supervisors of Logan Tp., 32 Pa. Commonwealth Ct. 474, 379 A.2d 1072 (1977) (employee's admission that he lived outside municipality supported commission's conclusion that employee's domicile was outside municipality). But cf. Rodgers v. Unemployment Compensation Board of Review, 40 Pa. Commonwealth Ct. 552, 397 A.2d 1286 (1979), and Borough of Zelienople, 22 Pa. Commonwealth Ct. 635, 349 A.2d 812 (1976) (no evidence set forth to indicate what was the substantial evidence used to support conclusion that employee not a bona fide resident of municipality).

course in New Jersey from February 13, 1980 to April 16, 1980.

Thus, we find substantial evidence[5] to support the commission's conclusion that Viggiano's Philadelphia apartment was a subterfuge for his change of domicile from Philadelphia to New Jersey.[6]

Accordingly, we affirm the order of the common pleas court.

ORDER

Now, May 9, 1983, the order of the Court of Common Pleas of Philadelphia County, Civil Trial Division, at No. 1226, April Term, 1981, entered on April 28, 1982, is affirmed.

---

[5] Our scope of review is limited to a determination of whether the constitutional rights of the appellant, Joseph Viggiano, have been violated; or there was noncompliance with the provisions of the Local Agency Laws in the proceeding before the commission; or an error of law has been committed; or the findings of the commission are not supported by substantial evidence. *Strauss v. Civil Service Commission*, 40 Pa. Commonwealth Ct. 560, 398 A.2d 1064 (1979).

[6] We note, however, that the commission's emphasis that Viggiano had been a life-long resident of New Jersey before becoming a Philadelphia police officer, that he attended New Jersey schools, and that he had once applied for employment with the City of Camden Police Department, relates to matters irrelevant to his intention to change his domicile. *See Chew v. State Correctional Institution at Dallas*, 50 Pa. Commonwealth Ct. 122, 412 A.2d 206 (1980).