IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Dylan Bell       :
                                       :
                                       :
                                       :
                                       :   No. 1165 C.D. 2016
                                         :   Submitted:  March 24, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge


OPINION
BY JUDGE COSGROVE                  FILED:  December 19, 2017


       Dylan Bell (Appellant), appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which dismissed his appeal of a ruling by the City of Pittsburgh (City) Civil Service Commission (Commission) that the City had just cause for passing over Appellant for consideration as a City firefighter.  Upon review, we affirm.

       In January 2014, Appellant applied for a position as a firefighter with the City.  (Reproduced Record (R.R.) at 36-37.)  The City Fire Chief (Fire Chief) passed over Appellant's application for just cause because Appellant did not reside within the City for one year prior to his application as required by Section 3 of the Firemen's Civil Service Act (Act) for Cities of the Second Class.[1]  Appellant appealed to the Commission and a hearing was held December 15, 2015.  The Commission found Appellant failed to provide evidence that would justify

_____

[1] Act of June 27, 1939, P.L. 1207, *as amended*, 53 P.S. § 23493.

overturning the decision of the Fire Chief. Further, the Commission found the Fire Chief acted within the broad discretion conferred upon him. The Commission noted the burden of proof for residency was on Appellant, a burden he did not meet, thus providing just cause for the Fire Chief to pass over him. Consequently, the Commission declined Appellant's invitation to substitute its judgment for that of the Fire Chief and denied Appellant's appeal. Appellant appealed the Commission's ruling to the trial court which took no additional evidence and affirmed the Commission's ruling. This appeal followed.[2]

## Discussion

Appellant argues the trial court erred by ruling the City established just cause before the Commission for passing over Appellant for a position as a City firefighter because the Commission relied upon improper hearsay testimony for its decision.

The process for application and appointment as a City firefighter is governed by Section 3 of the Act, which provides in pertinent part that no application shall be "received from any person who shall not have been a bona fide resident of the [C]ity for one year next preceding the date of his application." 53 P.S. §23493. The application and appointment process is also governed by Section 3.1 of the Act.[3] Section 3.1 of the Act provides that "appointments and promotions ... shall be made only from the top of the competitive list ... [but] the appointing officer may pass over

---

[2] Our review, in an appeal from a civil service commission adjudication where the trial court took no additional evidence, must focus upon the decision of the commission and a determination whether the commission abused its discretion, committed an error of law, or made findings unsupported by substantial evidence in the record. *Civil Service Commission of City of Pittsburgh v. Parks*, 471 A.2d 154, 156 (Pa. Cmwlth. 1984).

[3] Added by Act of July 3, 1963, P.L. 186, 53 P.S. §23493.1(a).

the person on the top of the competitive list for just cause in writing." 53 P.S. §23493.1(a).

A determination of an individual's legal residence is a question of law which is dependent upon the facts as found by the appropriate fact finder, who draws inferences from the evidence presented and weighs the credibility of the witnesses. *Homan v. Civil Service Commission, City of Philadelphia*, 368 A.2d 883 (Pa. Cmwlth. 1977). The relevant facts are determined by each individual case. *Civil Service Commission of City of Pittsburgh*, 471 A.2d at 156. The findings of fact of the Commission are conclusive upon appeal, however, the legal conclusions drawn therefrom remain subject to judicial review. *Foley v. Civil Service Commission of City of Philadelphia*, 423 A.2d 1351, 1353 (Pa. Cmwlth. 1980).

Residence is a matter of intent and intent is established by the actual state of the facts. *In re Shimkus,* 946 A.2d 139, 149 (Pa. Cmwlth. 2008); *see also In re Lesker*, 105 A.2d 376 (Pa. 1954). "Intent, being purely subjective, must to a large extent be determined by the acts which are manifestations of that intent." *Wallace v. Wallace,* 89 A.2d 769, 771 (Pa. 1952) (establishment of residency for purposes of a divorce).

Appellant argues that a residency determination is based on a collection of facts taken into consideration, and not on a single factor. Appellant asserts that domicile is a well-settled matter in Pennsylvania, requiring two elements to be met: physical presence, or residence, and intent to make the residence the principal home of the applicant.

The Commission, however, argues that where there is "substantial evidence of noncompliance with the requirements of the application process," the Fire Chief may exercise his discretion to pass over an applicant from the position of

3

firefighter recruit. *Civil Service Statutes, As Amended, & Rules Governing The Civil Service, City of Pittsburgh (Pittsburgh Civil Service Rules), Rule VI, §2(B)(7)*.[4] To this end, the Commission contends that the Fire Chief also has discretion to choose the method for obtaining information in an accreditation process. *Title One, Chapter 116 of the Pittsburgh City Code §116.02;*[5] *see also City of Pittsburgh v. Bachner*, 912 A.2d 368, 373 (Pa. Cmwlth. 2006) ("the just cause provisions of the [Act]…[do] not confer upon candidates the right to challenge the information-gathering procedures utilized to determine whether just cause exists.") As long as the information used by the Fire Chief to pass over the applicant supports just cause, the Commission argues, the Fire Chief's decision will not be overturned: Appellant did not meet his burden of proving his City residency and that failure is just cause for passing over Appellant for consideration as a City firefighter.

Per Section 3 of the Act, Appellant was required to be a resident of the City one year prior to the date of his application. Therefore, Appellant needed to establish residency in the City as of January 2013.

At the hearing held before the Commission on December 15, 2015, Lieutenant Thomas Trochan, Jr. (Trochan) testified on behalf of Appellant. Trochan testified he is employed by the Prince William County Department of Fire and Rescue in Virginia (Prince William). (Reproduced Record (R.R.) at 26-27.) Trochan is Appellant's supervisor; Appellant worked for him at Prince William for a year and a half. *Id.* at 26. When questioned about his knowledge of Appellant's

---

[4] *See* http:/ /pittsburghpa.gov/personnel/files/policies/10_ Civil_ Service_ Statutes_ Rules.pdf (last visited December 4, 2017).

[5]*See* https:// library.municode.com/pa/pittsburgh/codes/code_ of_ ordinances ?nodeId=COOR_ TITONEAD_ ARTIIIOR_ CH116DEPUSA_ S116.02PODUBUCHDIPUSA (last visited December 4, 2017).

4

residence, Trochan responded, "As far as I'm aware, he lives in Pittsburgh." *Id.* at 26. Trochan testified that Appellant's correspondence is sent to Pittsburgh, his driver's license is "in Pennsylvania" and he has Pennsylvania plates. *Id.* When Appellant leaves his shift in the morning, he "heads back to Pittsburgh." *Id.* Trochan explained that several firefighters live outside Virginia due to the cost of living. *Id.*

Appellant testified as follows. He graduated from high school in Monroeville, Pennsylvania and still lived with his parents when he began employment in Prince William. (R.R. at 32.) Appellant resided with his parents until he moved to Henderson Street in Pittsburgh and resided with Dan Doyle (Doyle), a City firefighter, and Doyle's wife. *Id.* at 31-32. Appellant moved in with Doyle in January 2014 and considered that his residence. *Id.* at 33, 40. At the time of the December 15, 2015 hearing, Appellant lived with his girlfriend at 3212 Joe Hammer Square in the City (Joe Hammer Square). *Id.* at 30, 38-39. Appellant testified when off duty from his job in Virginia, he "go[es] to his girlfriend's house." *Id.* at 39. While there, Appellant uses his girlfriend's visitor parking pass, which he can use because he isn't parking consecutively for five days. *Id.* at 42. Appellant established bank accounts in 2012, while he was still in high school. *Id.* at 44.

Doyle also testified on behalf of Appellant. He owns a house at 156 Henderson Street in the City (Henderson Street) and Appellant lived with him and his wife for a "good year and a half." (R.R. at 47.) Appellant rented a room from him for $200.00 per month. *Id.* at 48. Doyle was close friends with Appellant's father and the living arrangement was informal. *Id.* Appellant resided with him beginning in "late fall, early winter…December, January maybe of '13ish, somewhere around there." *Id.* at 49. Doyle testified Appellant moved in with him not long after Appellant graduated from high school. *Id.*

A neighbor of the Joe Hammer Square property, Mia Satory (Satory) testified that Appellant's truck is "always" parked in the neighborhood. (R.R. at 55.) Satory testified it was "hard to miss" and "[took] up a lot of room." *Id.* Elizabeth Owens, Appellant's girlfriend, testified Appellant began living with her at the Joe Hammer Square property in September 2015. *Id.* at 56. Appellant is at the house every two days for 24 hours. *Id.* at 57.

In support of his testimony that he complied with the residency requirements of Section 3 of the Act, Appellant submitted the following exhibits. Appellant's certificate of voter registration indicating the Joe Hammer Square address with an enrollment date of February 2, 2012 and valid-on date of October 1, 2015 or upon receipt by the voter. (Appellant Exhibit #1; R.R. at 81.) Appellant's Pennsylvania driver's licenses issued January 28, 2015 and September 19, 2015, which respectively indicate Henderson Street and Joe Hammer Square as his addresses. (Appellant's Exhibit #2-3; R.R. at 82-83.) A letter dated December 2, 2015 from PNC Bank which indicated he opened three accounts on June 14, 2012. (Appellant's Exhibit #4; R.R. at 84.) Three cancelled checks to Appellant's landlord, drawn on Appellant's bank account, dated September 25, 2015, October 28, 2015, and December 1, 2015. (Appellant's Exhibit # 5; R.R. at 85-87.) All three checks indicate a Monroeville, PA address. *Id.*

The City presented the testimony of Erin Kathleen Bruni (Bruni), who investigated Appellant's residency. Appellant objected to her testimony as based on inadmissible hearsay. The City responded that the records which formed the basis of her testimony constituted business records, an exception to the hearsay rule. The Commission allowed Bruni to testify and indicated it would weigh Appellant's

6

inability to cross examine the witnesses who provided Bruni with information when making its final determination. (R.R. at 17.)

Even excluding the objected-to testimony and exhibits offered by Bruni, Appellant has not established he resided in Pittsburgh in January 2013. Appellant's documentary evidence indicates, at best, he changed his address to Pittsburgh in January 2015. The enrollment date on Appellant's registration card does not establish he resided in Pittsburgh in February 2012, merely that he registered to vote at that time. In June 2012, when Appellant opened the PNC Bank accounts, Appellant was in high school and living with his parents. The letter from PNC Bank merely establishes a Joe Hammer Square address as of December 2015. In addition, the address listed on Appellant's checks identifies the Monroeville, PA address of his parents. The first check Appellant wrote to his landlord was dated September 25, 2015, well beyond the January 2014 application filed by Appellant and January 2013 time frame required to establish residency. Further, Appellant failed to offer or produce a lease to substantiate Appellant did, in fact, change his residency to Joe Hammer Square in the City.

As to the Henderson Street address, no substantive evidence was presented to support the argument that Appellant actually resided there since approximately January of 2013. In fact, not only did Doyle testify he had no lease with Appellant, he also testified that Appellant only paid the rent in cash, thus precluding presentation of evidence such as cancelled checks. Finally, Appellant's testimony regarding when he moved to the Henderson Street address actually conflicted with Doyle's and suggested he moved there in January 2014. On the other hand, Doyle's testimony as to exactly when Appellant moved in was, at best, equivocal.

7

Our review of the evidence establishes that Appellant's proof of residency was insufficient and did not satisfy Appellant's burden of proving he was a bona fide resident of the City and domiciled within the City no later than January of 2013. Appellant may have resided in the City prior to January 2014, but the evidence fails to show that this occurred at least as of January 2013.

In sum, the Commission's findings are supported by the record. Matters of witness credibility, evidentiary conflict and evidentiary weight are within the province of the Commission, not this Court. *Homan*. All factors, not simply one single factor, were considered to create a full picture determination. *Civil Service Commission of City of Pittsburgh; Foley*.

Thus, we discern no error in the determination that the City had just cause for passing over Appellant for consideration as a City firefighter because he did not reside within the City for one year prior to his January 2014 application.

Accordingly, we affirm the trial court's order.

_____
JOSEPH M. COSGROVE, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Dylan Bell     :
                                :
                                :
                                :
                                :     No. 1165 C.D. 2016
                                :


O R D E R


AND NOW, this 19th day of December, 2017, the order of the Court of Common Pleas of Allegheny Count is affirmed.


_____
JOSEPH M. COSGROVE, Judge