524 A.2d 531

AVCO Corporation, Lycoming Division, Petitioner
*v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

AVCO Corporation, Lycoming Division, Petitioner
*v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

AVCO Corporation, Lycoming Division, Petitioner
*v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 19, 1986, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Don A. Banta, Maphin, Banta & Cox,* with him, *Charles J. McKelvey* and *William R. Tait, Jr., McNerney, Page, Vanderlin & Hall,* for petitioner.

No appearance for respondent.

*Quintes D. Taglioli,* with him, *Richard H. Markowitz,* for intervenors, Paul D. Batkowski, Jesse L. Fry and Kenneth D. Simcox.

OPINION BY JUDGE PALLADINO, April 16, 1987:

AVCO Corporation, Lycoming Division (petitioner) appeals an order of the Unemployment Compensation

Board of Review (Board) awarding benefits to Paul D. Batkowski, a token claimant representing members of the United Auto Workers AFL-CIO Local 787 employed by petitioner. The Board affirmed the referee's decision which awarded benefits to claimant under Section 402(d) of the Unemployment Compensation Law (Law).[1] Section 402(d) of the Law bars a claimant from receiving compensation for any week in which his unemployment was because of a stoppage of work existing as a result of a labor dispute, other than a lock-out by employer. The referee concluded that although the initial action by the union members was a strike, it was converted to a lock-out when petitioner refused to accept the union's August 4, 1983 offer to return to work under the terms and conditions of the unexpired union contract. For the reasons which follow, we affirm.

In anticipation of the expiration of the collective bargaining agreement between petitioner and claimant's union, the parties commenced negotiation on a new agreement. On May 23, 1983 and June 13, 1983, the union offered to continue working under the terms of the existing agreement while negotiation continued. Petitioner rejected this offer. At 12 o'clock a.m. on June 17, 1983 the current agreement expired and at 12:01 a.m. on June 18, 1983 the union commenced a work-stoppage. Thereafter, negotiations continued and on August 4, 1983 the union again offered to return to work under the terms and conditions of the prior agreement. This offer was not accepted.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

[2] By letter dated September 2, 1983, the union again offered to "continue working under the terms and conditions of employment that existed on and before June 17, 1983."

In response thereto, petitioner, on September 9, 1983, accepted the union's offer conditioned upon the union's agreement to the

Claimant filed for unemployment compensation which was denied because the Office of Employment Security (OES) determined that claimant's unemployment was occasioned by a strike against petitioner and, thus, was non-compensable under Section 402(d) of the Law. Both the referee and the Board affirmed this decision. Claimant and two others, as token representatives of the union members, appealed to this Court asserting that the work-stoppage was the result of a lock-out rather than a strike.

We addressed these contentions in *Batkowski v. Unemployment Compensation Board of Review*, 89 Pa. Commonwealth Ct. 51, 491 A.2d 953 (1985). Although we concluded that the initial action of the union constituted a strike, we vacated the Board's order and remanded for a determination of whether the August 4, 1983 offer to return to work under the terms and conditions of the prior agreement converted the strike to a lock-out. On remand, the referee again determined that the union's action initially constituted a strike and made the following additional findings of fact: "10. On August 4, 1983, the Union offered to return to work under the terms of the old agreement; 11. The Union's offer to return to work under the terms of the old agreement was not accepted by management." The Board affirmed the referee's decision and petitioner appealed to this Court.

Whether a work stoppage resulted from a strike or lock-out is a mixed question of law and fact subject to this Court's review. *Hoffman v. Unemployment Compensation Board of Review*, 100 Pa. Commonwealth Ct.

---

following: "the Company is unwilling to give any assurances as to how long those terms and conditions will be extended, and they will be subject to unilateral change by the company. . . ."

Because of the equivocal language employed by petitioner, the union concluded that it was not an acceptance of the union's offer to maintain the status quo. We agree.

264, 514 A.2d 668 (1986). Claimant bears the burden of proving that a lock-out caused the work stoppage. *Id*. Where the party with the burden of proof prevailed below, the findings of fact are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support these findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Our scope of review is limited to a determination of whether errors of law have been committed, constitutional rights violated or findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

The well-established test for determining whether a work stoppage is the result of a lock-out or a strike was set forth by our Supreme Court in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), as follows:

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Id*. at 444-45, 163 A.2d at 93-94.

Therefore, the work stoppage which occurred on June 18, 1983 was the result of a strike and claimant is

ineligible to receive benefits for the compensable week ending June 25, 1983. As we stated in *Batkowski:*

> Here, the Union's alleged offers to continue working under the expiring agreement were made in one instance three weeks and in the other four days before the agreement actually expired. Of course an employer's refusal to grant an extension of an agreement *need not* be made at the moment of the agreement's expiration for a lock-out to occur. [Emphasis in original. Citation omitted.] However, where, as here, the Employer's alleged refusal occurs four days before the agreement's expiration date and the Board has found that at the commencement of the work stoppage work was available under the terms and conditions of the expired agreement, such a refusal would not constitute a lock-out. Thus, we conclude that even if the Board had found that the Union offered during the May 23 and June 13 negotiating sessions to continue working under the old agreement, the Employer's refusal of these offers would not have constituted a lock-out. See Grzech v. Unemployment Compensation Board of Review, 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981). (Employer's refusal to extend the agreement on the day before it expired held to be a negotiation tactic used to buttress the Employer's final offer.)

89 Pa. Commonwealth Ct. at 58-59, 491 A.2d at 956 (footnote omitted).

The remaining issue for our disposition is whether a strike, once established, can be converted to a lock-out. In *Hoffman v. Unemployment Compensation Board of Review,* 100 Pa. Commonwealth Ct. 264, 268, 514 A.2d 668, 671 (1986), we stated that a "strike may be converted to a lockout for purposes of Section 402(d) of the Act

when an employer refuses to accept a union's offer to work for a reasonable period of time under the status quo conditions pending negotiation of a new contract." *See also Batkowski.*[3]

In *Batkowski* we vacated the order of the Board and remanded for findings of fact as to whether the union, on August 4, 1983, offered to resume working under the terms and conditions of the expired agreement. The referee found that the union had made such an offer, which petitioner did not accept. As the referee's findings are supported by substantial evidence of record, we now hold that employer's failure to accept the union's offer to return to work under the terms and conditions of the expired collective bargaining agreement converted the strike to a lock-out as of August 4, 1983.

Petitioner contends that the union's offer on August 4, 1983 was to enter into a one-year contract or to extend the contract which, it claims, was not an offer to continue working for a reasonable time under the pre-existing terms and conditions as specified in *Vrotney.* First, the referee found that the union "offered to return to work under the terms and conditions of the old agreement." As stated above, this finding is supported by substantial evidence of record. Second, the very language of *Vrotney* militates against any such interpretation:

Have the employees offered to continue working for a reasonable time under the pre-existing

---

[3] Both *Hoffman* and *Batkowski* rely upon *High v. Unemployment Compensation Board of Review,* 505 Pa. 379, 479 A.2d 967 (1984), wherein our Supreme Court held that a union's refusal of an employer's offer to resume operations under the terms and conditions of an expired collective bargaining agreement converted what was initially a lock-out into a strike, the converse of the fact situation in the case at bar. Further, while both *Hoffman* and *Batkowski* state that a strike can be converted to a lock-out, neither case actually applies this statement of the law.

terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer *refuses to so extend the expiring contract* and maintain the status quo. . . .

*Vrotney,* 400 Pa. at 444-445, 163 A.2d at 93 (1960) (emphasis added). *Vrotney* equates continuing to work under "the pre-existing terms and conditions of employment" with "extending the contract." Therefore, petitioner's assertion that the union's offer was to extend the contract for a *definite period* of time as opposed to a *reasonable period* of time is without merit.[4]

Accordingly, we affirm.

### ORDER

AND NOW, April 16, 1987, the order of the Unemployment Compensation Board of Review in the above-captioned case is affirmed.

---

[4] Petitioner cites *Westinghouse Electric Corporation v. Unemployment Compensation Board of Review,* 187 Pa. Superior Ct. 425, 144 A.2d 856 (1958), for the proposition that an offer to continue working for a *specific* period of time is not an offer to continue working for a reasonable period of time. *Westinghouse* is inapplicable to the case at bar because: 1) it is pre-*Vrotney,* and 2) it involves a union's offer to continue working only if there was a formal written 90-day extension of the contract. The union has placed no such restriction upon its members' return to work.

---

DISSENTING OPINION BY JUDGE BARRY:

The majority has ruled that the employer's failure to accept the union's offer to return to work under the terms and conditions of the old agreement constituted a

lockout. I would agree with the majority that, *if* the employer had failed to accept the union's offer, a lockout would have occurred. The majority correctly points out that a strike can be converted into a lockout. Similarly, a lockout can be converted to a strike. Although I agree that the employer's failure to respond promptly to the union's offer of August 4, 1983, to return to work can be construed as a failure to accept the union's offer, the employer's eventual response, as evidenced by its letter of September 9th, was an unequivocal and properly-worded acceptance as a matter of law. The employer's act of referring, in its acceptance letter, to its right to make unilateral changes after a reasonable period of time did not vitiate its acceptance. An employer is free to make unilateral changes in the status quo following a reasonable period of time after employees return to work under an old agreement and bargaining has reached an impasse provided that the employer has negotiated in good faith up to that point. *Industrial Union of Marine and Shipbuilding Workers of America v. National Labor Relations Board,* 320 F.2d 615, 619-20 (C.A. 3 1963), cert. denied, *sub nom Bethlehem Steel Co. v. National Labor Relations Board,* 375 U.S. 984, 84 S.Ct. 516 (1964); *National Labor Relations Board v. Katz,* 369 U.S. 736, 82 S.Ct. 1107 (1962).

I would grant benefits for the period from August 4 to September 9 and deny benefits thereafter.

Therefore, I respectfully dissent.